ELKINS
*vs.*
ZACHARIE.

---

## ELKINS *vs.* ZACHARIE.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Clerical errors when they appear merely as such in entering orders, &c. ought not to be allowed to affect the rights of the parties, and should be disregarded.

Where a debtor is imprisoned on a judgment and execution exclusively in the name of the plaintiff, although others may have an interest therein ; and after having given bond for the prison limits, the plaintiff in execution gives him a written *" consent as far as he is interested,"* to "absent himself for ten days, of which the debtor avails himself and leaves the prison limits without consulting the other persons interested, the surety in the prison bond is thereby discharged.

The plaintiff in execution for whose benefit the prison bond is taken, is the only person who can control its conditions, and his consent that the debtor be absent only for ten days, forever discharges the surety.

This suit was instituted on a prison bond, against the de-
fendant J. W. Zacharie as surety of H. W. Palfrey, for the
prison limits of the parish of Orleans, on an allegation and
preliminary proof that the latter had departed from said pri-
son limits contrary to the tenor of his bond and without the
order of the court or the consent of the plaintiff. Judgment
was prayed against the surety for the amount of the original
debt, interest and costs, on the ground that the bond was
forfeited and the surety liable.

The surety pleaded the general issue; and that Palfrey was
permitted to leave the prison bounds by the order and con-
sent of the plaintiff, and by reason whereof he as his surety
was discharged.

It was agreed at the trial that the defendant be considered
as having pleaded Palfrey's discharge from his debts, (after
*cessio bonorum*) by the necessary vote of his creditors in num-
ber and amount in March 1833; and before the present suit
was instituted.

On the trial two bills of exception were taken to the opin-
ion of the court. 1st. By the defendant's counsel to the ad-
mission of the prison bond sued on, *in evidence,* because the
*exparte order* directing the sheriff to assign the bond to the
plaintiff, bore date the 3d of June 1833, and referred to *a
bond* dated the 8th of June 1833, instead of the 8th *June* 1831,
the *true date.* The objection was overruled on the ground
that the descrepancy in dates was a mere clerical error.
2. To the rejection of Palfrey, offerred as a witness for de-
fendant on the score of interest. The defendant's counsel
resisted the objection on the ground that Palfrey was indif-
ferent, as he was neither liable to plaintiff or defendant in
consequence of his discharge from this debt under the insol-
vent laws.

The plaintiff produced the bond sued on in evidence,
and proved the departure of Palfrey from the prison limits.

The defendant offered in evidence as a justification of Pal-
frey's leaving the prison limits, and as operating the discharge
of his surety, the following written note from the plaintiff.

Eastern Dis.
June, 1834

ELKINS
vs.
ZACHARIE.

"To George Eustis, esq."

"Mr. Palfrey wishes to leave the city for his family to be absent ten days. As far as I am interested in the suit against him I consent to suspend proceedings for that period, and that he be absent that time."

(directed on the back)                    S. Elkins."

"To George Eustis, esq."            "20th October 1831,"

"Present."

This note was open, written and given to Mr. Palfrey to be, by him, handed to Mr. Eustis. The evidence shows that Palfrey never delivered this note; that he looked for Mr. Eustis and not finding him, immediately showed it to Mr. Holland the deputy sheriff, and asked his opinion if it was sufficient authority to allow him to depart, who replied he that it was. Palfrey then left the prison limits.

It was in evidence that the original judgment and execution upon which Palfrey was imprisoned stood alone in the name of the plaintiff, but that Mr. Eustis and others were *interested* in said judgment; that Mr. Eustis was also the counsel who obtained the judgment and managed the suit; and that the plaintiff in the present suit alleges, and has proved, that George Eustis and the heirs of Henry De Ende, deceased, were interested in said judgment against Palfrey, "and for whose use and benefit, as well as in his own right he *now* sues."

The following extract from the bilan and the proceedings of Palfrey's creditors before the notary in February 1833, were also in evidence.

"H. De Ende and Samuel Elkins two notes, due in 1829–'30, for seven thousand two hundred dollars, less six thousand dollars paid."

"Samuel Elkins being duly sworn by me, notary, declared that the said H. W. Palfrey owes to him, to George Eustis, and the estate of H. De Ende, a sum of one thousand two hundred dollars and upwards, with interest, by virtue of a judgment. This appearer reserves all his rights and remedies as well against H. W. Palfrey, as against his securities

on the prison bond for breaking the limits. He grants no discharge, &c."                                                    S. Elkins.

Judgment was given against the surety for the amount of the plaintiff's demand.

The surety appealed.

*Eustis*, for the plaintiff.

1. The letter addressed to G. Eustis was never delivered, and the plaintiff was never bound thereby.

2. The terms of the letter did not authorise the departure of Palfrey, but implied that the assent of the other parties should be given to it.

3. The exception of the *cessio bonorum* is *personal* to the principal debtor and not available to the surety.

*Slidell*, contra:

1. Contended that the inferior court erred in refusing to admit Palfrey as witness; the discharge by his creditors operated as a complete extinguishment of the debt.

2. The prison bond is a mere accessory of the original debt and its obligation is also extinguished. Palferey has no interest directly or indirectly in the event of this suit; and there is no other cause of exclusion on the ground of incompetency, all other objections go to his credibility, &c. *La. Code*, 2260. 4 *La. Rep.* 200.

3. The bond should not have been admitted in evidence, because by the 14th section of the act of 1808, requiring the court, on *due proof* of breaking the bounds, to direct the sheriff to assign the bond to the plaintiff, evidently contemplates that it shall be done contradictorily with the surety; and because the order directing the assignment refers to a bond of date the 8th June 1833, when the one in evidence bears date June 8th 1831.

4. Proceedings in a suit of this character are *stricti juris* and all the formalities of law should be rigorously observed. 7 *Mar. N. S.* 523.

5. Palfrey having left the prison bounds with the express

EASTERN DIS. written consent of the plaintiff in execution, the bond was
June, 1834.

ELKINS
vs.
ZACHARIE.

discharged and the surety released from the obligation. 5 *John. Rep.* 365.

6. The note from the plaintiff to his attorney was an unconditional permission for the defendant in execution to leave the prison limits, because he alone was interested in the judgment. This bond was given to Elkins alone for his sole benefit.

7. There was no bad faith on the part of Palfrey in giving this note to Zacharie, and even if there was, he had a right to avail himself of it. 5 *La. Rep.* 375.

8. The release of the principal obligation by the discharge of Palfrey under the insolvent laws, extinguished the accessary obligation of the defendant.

MATHEWS, J., delivered the opinion of the court.

This suit is brought on a bond given by the defendants in which Palfrey is principal, and Zacharie surety. The bond was executed in pursuance of an act of the legislature fixing limits or bounds for the public jail of the city of N. Orleans, and authorising persons in the custody of the sheriff, whether on *mesne process* or under execution, on giving bond with good and sufficient security to obtain the privilege of the prison bounds, &c.

In the present case the action is prosecuted against the surety alone, the principal having obtained the benefit of our insolvent laws and consequently being released from civil pursuits. Judgment was rendered against the defendant Zacharie in the court below, from which he appealed.

An exception was taken on the part of the defendant relative to the manner in which the order requiring the sheriff to assign the bond was made. This exception had the appearance of some weight when first presented; but on reflection, we are of opinion with the judge *a quo*, that the error or mistake in relation to this matter was merely clerical, and ought not to be allowed to affect the rights and interest of the plaintiff in the action.

*Clerical errors when they appear merely as such in entering orders, &c., ought not to be allowed to affect the rights of the parties, and should be disregarded.*

As to the merits of the cause, its decission depends on the effect which ought to be given to one single fact, that is, the alleged permission granted by the plaintiff allowing the defendant in execution to absent himself, &c. The evidence fully establishes that the defendant Palfrey, who had been arrested on a *ca. sa.* and given bond as required by law to remain within the prison limits, did go beyond those limits. Unless he was authorised so to do, either by leave of the court, or by the order or permission of the plaintiff in execution, the bond was forfeited by this act of the defendant and his surety rendered liable to pay all consequential damages to the person at whose suit he had been arrested and imprisoned. But it is contended in favor of the surety, that the principal by departing from the prison bounds under the circumstances in which it was done did not break his covenant, and consequently no obligation was imposed on the surety to pay the penalty, or make satisfaction to the plaintiff on account of injury done or damages suffered by him. Because the violation of the conditions of the bond was the consequence of an act done in pursuance of the consent and permission of the person at whose instance the debtor was confined within the limits of the jail. The existence of this consent and permission rests on the interpretation which must be given to a note addressed by the plaintiff to Mr. Eustis his counsel in this case, and who had acted for him in obtaining the judgment and issuing the *capias ad satisfaciendum* on which Palfrey had been arrested and imprisoned. This note in the shape of an open letter was delivered to the defendant in execution and addressed as above stated. It is in the following words, " Mr. Palfrey wishes to leave the city for his family, to be absent ten days. As far as I am interested in the suit against him, I consent to suspend proceedings against him, and *that he may be absent that time.*"

The only condition or limitation contained in this instrument, is such limitation as the interest of the writer was legally subjected to, in the property which he had in the judgment and execution; and in relation to his right of control and use of them. If he had full property and

EASTERN DIS. control over this judgment and execution, then his consent
*June, 1834.*
that the defendant might absent himself from the prison
bounds for the space of ten days was co-extensive with
the interest and control which he held over the instrument
which authorised the imprisonment, and the permission
granted was unconditional and without limit or reserve.
The judgment and *ca. sa.* under which Palfrey's confine-
ment took place, are exclusively in the name of Elkins, in
this manner the first was obtained and the last issued.
They were therefore in a legal point of view entirely his
property, and the measures pursued under them were severe
legal steps.      By his own power through the aid of the
court he bound the defendant and by his individual au-
thority he had a right to release him, which he did.    The
evidence of the case does not clearly show that any other
persons were at the time interested in this judgment and
execution either legally or equitably.    Consequently to
make the consent and permission granted by the plaintiffs
available, did not require the concurrence of any one else;
and therefore the circumstance of the note having been
addressed to Mr. Eustis ought not to be permitted to
destroy the right and privilege which the defendant ac-
quired under it.

ELKINS
*vs.*
ZACHARIE.

Where a debt-
or is imprisoned
on a judgment
and execution
exclusively in the
name of the
plaintiff, al-
though others
may have an in-
terest therein;
and after having
given bond for
the prison limits,
the plaintiff in
execution gives
him a written
"consent, as far
he is interested,"
to absent himself
for ten days, of
which the debtor
avails himself
and [leaves the
prison limits
without consult-
ing the other
persons interest-
ed, the surety in
the prison bond
is thereby dis-
charged.

The plaintiff in execution for whose benefit the prison
limits bond was taken is the only person who had power over
its conditions; he consented to release them, (at least tem-
porarily,) he agreed to let the defendant go at large for
the period of ten days; he was willing that his adversary
should enjoy his liberty, should be released from the
restraint imposed by the bond.    *Volenti non fit injuria.*
By this consent the surety was discharged from all obliga-
tions created by that bond; and being once discharged it
could never have effect against him afterwards.

The plaintiff in
execution for
whose benefit the
prison bond is
taken is the only
person who can
control its con-
ditions, and his
consent that the
debtor be absent
only for ten days,
forever dischar-
ges the surety.

It is therefore ordered, &c., that the judgment of the
District Court be avoided, reversed and annulled; and it is
further ordered, &c., that judgment be here entered for the
defendant, Zacharie, with costs in both courts.